# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    Plaintiff,    Case No.: 1:24-cr-00335-TNM

v.

ROBERT DOWELL,

    Defendant.
_____/

## SENTENCING MEMORANDUM OF DEFENDANT ROBERT DOWELL

Defendant Robert Dowell, through undersigned counsel, respectfully submits the following Sentencing Memorandum for the Court's consideration pursuant to 18 USC §3553.

    Respectfully submitted,

    **FUNK, SZACHACZ & DIAMOND, LLC**

    **/s/ Kepler B. Funk**
    KEPLER B. FUNK
    Florida Bar # 957781
    Pro Hac Vice Counsel for Dowell
    321-953-0104
    kep@fsdcrimlaw.com

    **/s/ Alan S. Diamond**
    ALAN S. DIAMOND
    Florida Bar # 949698
    Pro Hac Vice Counsel for Dowell
    321-953-0104
    alan@fsdcrimlaw.com

**MEMORANDUM**

**FACTUAL AND PROCEDURAL BACKGROUND:**

On April 17, 2024, Robert Dowell voluntarily appeared for his Initial Appearance pursuant to Fed. R. Crim. P. 5(C) in the Middle District of Florida. There and then, Mr. Dowell was released on conditions set by The Honorable Robert M. Norway and the case was removed to this Court. On August 26, 2024, at 10:00 a.m., Robert Dowell will be arraigned and then enter pleas of guilty to the two Class B Misdemeanors alleged via Information in Document 13, to wit: 40 USC § 5104(e)(2)(D)- Disorderly Conduct on Capitol Grounds and 40 USC § 5104(e)(2)(G)- Demonstrating in any Capitol Building. Given the Class B nature of the two misdemeanors, the guidelines are not applicable. (See § 1B1.9 Sentencing Guidelines). Your undersigned counsel, on behalf of Mr. Dowell, respectfully submits that a noncustodial sentence would be appropriate in this case.

**REASONS IN SUPPORT OF A NONCUSTODIAL SENTENCE:**

Mr. Dowell respectfully submits that a fine and/or a term of probation would satisfy the purposes of sentencing in 18 USC § 3553(a). A fine and/or a probationary term would be consistent with the § 3553 factors and would be reasonable based upon the particular facts and circumstances of this case as well as Mr. Dowell's history and character.

***The nature and circumstances of the offense and the history and characteristics
of Robert Dowell support a fine and/or a probationary sentence.
18 USC § 3553(a)(1)***

A reasonable sentence considers the nature and circumstances of the offense and the historical characteristics of the defendant pursuant to 18 USC § 3553(a)(1). Undersigned counsel, on behalf of Mr. Dowell, respectfully submits that both the nature and circumstances of the offense and the history and characteristics of Mr. Dowell justify a fine and/or a probationary sentence.

Mr. Dowell stands before the Court a 71-year-old with zero prior criminal history. Mr. Dowell served in the United States Army for six years and was Honorably Discharged in 1975. He has a Bachelor of Science degree in Aviation Technology and a Master's degree in Operations Research. He is retired after a 30+ year career as an engineer, last working for General Electric Avionics and Med-Plast in Grand Rapids, Michigan. He has been married to his spouse, Sharon, for 43+ years and they now reside in Palm Bay, Florida. They have two grown, successful children, one a professional violinist, the other, a business manager. Sharon and their two daughters have provided unwavering support for Mr. Dowell throughout the pendency of these proceedings. Mr. Dowell has an unwavering faith and is active in his church, as evidenced by letters accompanying this memorandum. (*See* Attachment A).

The facts surrounding the January 6 event at the Capitol have been well documented. To be sure, there were actors whose conduct was reprehensible, violent, felonious, and destructive. Mr. Dowell was not one of those actors. As the Court is aware, thousands of people congregated outside of the Capitol and then inside the Capitol on January 6.

Mr. Dowell did lawfully attend a rally at Freedom Plaza on January 6. At the conclusion of the rally, thousands of people began to walk toward the Capitol. Mr. Dowell was among the people walking toward the Capitol. In fact, he entered the Capitol through the Senate wing, as did throngs of people. He did not commit any criminal mischief to any door, window, or structure to enter. He simply walked through the open doors. While many wore tactical gear, carrying flags, and signs, Mr. Dowell did not. He wore no clothing or gear that contained any words or slogans and similarly, carried nothing more than a plain backpack, containing some food and water. He carried no weapons of any sort, nor any flag or walking stick that could have even served as a weapon. He walked through the halls of the Capitol, listening and observing, occasionally joining in the refrain saying, "Our House." He, along with hundreds of others, walked up a staircase and walked through Statuary Hall. At about 2:55 p.m., a large police presence required Dowell and others to leave the building through the Upper House Doors on the east side of the Capitol. Mr. Dowell exited the Capitol. At 3:20 p.m., Mr. Dowell approached the doorway of the Rotunda Doors. At the same time, police officers prevented anyone, including Mr. Dowell, from reentering the building. Mr. Dowell never reentered the Capitol. Those are the pertinent facts as they specifically relate to Mr. Dowell's actions.

Mr. Dowell now realizes, even though he hurt no one, did not destroy any property nor did he incite any others to do either; his mere walking into the Capitol amongst a large protesting crowd of others, at the time a joint session of Congress convened, results in his committing two Class B misdemeanors. He fully accepts responsibility for his actions and is not downplaying his wrongdoing; rather the

information above is being provided to contextualize his conduct and demonstrate the aberrant nature of this offense in Mr. Dowell's otherwise law-abiding and productive life for the past 71 years.

### *Robert Dowell understands the seriousness of his offense.*
### 18 USC § 3553(a)(2)(A) and § 3553(a)(2)(B)

The Court's sentence should reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense according to § 3553(a)(2)(A).  This sentence should also adequately deter criminal conduct under § 3553(a)(2)(B).  Mr. Dowell appreciates the seriousness of his offenses and has expressed genuine remorse for his actions.  He has been able to reflect on his actions and has accepted full responsibility for them.  This is best reflected in his disclosure of his illegal conduct to his family members, friends, and pastor.  To a person, they find his criminal behavior to be out of character for the mild-mannered Robert Dowell.  Mr. Dowell's confession to his loved ones, friends, and pastor was difficult for him.  Despite this difficulty, their positive responses and acceptance of his apologies, has caused Mr. Dowell to realize that his support network is strong.  While Mr. Dowell's behavior negatively impacted these relationships, their willingness to continue to support him will be a motivating factor for Mr. Dowell moving forward with a law-abiding and productive lifestyle. (*See* Attachment A).

Mr. Dowell's appearance as a defendant in a federal criminal courtroom was eye-opening to him.  Mr. Dowell is someone who has never had any negative contact with law enforcement or the criminal justice system.  Consequently, this experience resulted

in a self-reflection where he struggles with the knowledge that his offenses are contrary to his values and the values he instilled in his two daughters.

Mr. Dowell has cooperated with the Government and instructed your undersigned to effectuate a plea of guilty as soon as practicable. The Government knew about his willingness to accept responsibility as early as his Initial Appearance date.

### *A term of imprisonment is not necessary to protect the public, as Mr. Dowell is less likely to reoffend.*
### 18 USC § 3553(a)(2)(C)

A reasonable sentence should protect the public from further crimes of the defendant pursuant to 18 USC § 3553(a)(2)(C). Mr. Dowell presents little risk of committing crimes in the future. His history and character are consistent with a person who presents a low risk for recidivism. Mr. Dowell has no prior arrests, juvenile adjudications, or adult convictions whatsoever, and he has no other pending charges. He has remained in compliance with all conditions set by Judge Norway on April 17, 2024, including being supervised by pretrial services and surrendering his passport.

Mr. Dowell is less likely to reoffend because he has accepted responsibility for his actions and shown remorse through his conduct in this case. As this Court knows, a guilty plea is an important step in the rehabilitative process. This quick acceptance and embarrassing disclosure to family, friends, and his pastor, evidences his commitment to living a law-abiding life in the future. Therefore, a custodial sentence is not necessary to deter Mr. Dowell from criminal conduct or to protect the public. Additionally, the January 6 incident was unprecedented and highly unlikely to occur again in Mr. Dowell's lifetime. In this particular case, there will be no future lure of quick money or unwitting

victims to exploit or the prevalence of drugs to entice, like in so many other cases. This case is a one-off scenario. This fact weighs heavily in favor of Mr. Dowell never committing any crime in the future and thus no need to protect the public from Mr. Dowell.

The United States Sentencing Commission overview of recidivism among federal offenders published in March 2016 further supports a finding that Mr. Dowell is less likely to reoffend due to his age. Mr. Dowell is 71 years old. "Studies have repeatedly shown that older offenders at sentencing are at a lower risk for reoffending, and the Commission's research confirms theses findings." United States Sentencing Commission, *Recidivism Among Federal Offenders: A Comprehensive Overview*, p. 23[1] The rearrest rate for individuals who are older than 60 at the time sentencing is 14%. *Id.* Comparatively, the rearrest rate for those between 36-40 years old at the time of sentencing is 47.4%. *Id.* Further, Mr. Dowell's lack of a prior criminal record supports a finding that he is unlikely to reoffend. In the 2016 report, the Commission noted that "[f]ully consistent with its previous recidivism studies, the Commission's present study found that recidivism rates are most closely correlated with total criminal history points. For example, 30.2 percent of offenders with zero total criminal history points were rearrested within eight years, compared to 81.5 percent of offenders with more than 10 total criminal history points." *Id.*, at 18.

The aberrant nature of these offenses compared to the balance of Mr. Dowell's law-abiding life is also noteworthy. The United States Sentencing Commission has found that offenders with zero criminal history points, like Mr. Dowell, have "lower rates

---

[1] Available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.

of recidivism than offenders with one or more criminal history points. Even among offenders with zero criminal history points, offenders who have never been arrested have the lowest risk of recidivism of all." UNITED STATES SENTENCING COMMISSION, RECIDIVISM AND THE "FIRST OFFENDER" p. 17 (May 2004).[2] The Commission identified four characteristics associated with less culpable criminal conduct:  no use of violence or weapons; no bodily injury of a victim; a minor role or minimal participation in the instant offense, and acceptance of responsibility." *Id.*, at 9-10, citing to criteria under § 5C1.2. All four of these characteristics are present in Mr. Dowell's case.

### *A fine and/or a probationary sentence is available and would be sufficient for these Class B Misdemeanors 18 USC § 3553(a)(3) and 18 USC § 3553(a)(4)(A)*

The Court's sentence should consider the kinds of sentences available, and the sentencing rate established for the applicable category of offense committed by the applicable category of defendant set forth in the guidelines under 18 USC § 3553(a)(3) and 18 USC § 3553(a)(4)(A). In arriving at a sentence that is "sufficient, but not greater than necessary" to satisfy Congress' sentencing mandate, this Court is also asked to consider the kinds of sentences available and the sentencing range called for by the advisory guidelines and applicable statutes. Of course, since Mr. Dowell's offenses are merely Class B Misdemeanors, the advisory guidelines are inapplicable. Although this is true, guidance from 18 USC § 3553 allows the Court to arrive at a sufficient, but not greater than necessary sentence.

---

[2] Available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf.

Given the unique set of circumstances underlying the criminal activity committed here, along with Mr. Dowell's history, a fine and/or a probationary term is available and would be sufficient in this matter.

The Supreme Court of the United States has recognized that while less severe than imprisonment, the imposition of a probationary term still subjects a defendant to serious consequences. In *Gall v. United States*, 552 U.S. 38, 48-49 (2007), the Court noted:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. *See United States v. Knights*, 534 U.S. 112, 119 (2001). (Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'" (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987))).

While a fine and/or probation is a less severe sentence than imprisonment, a fine and/or probation would be sufficient in this unique matter. A period of probation, for instance, would enable Mr. Dowell to continue to affirmatively demonstrate to the Court that he is dedicated to resuming his life as a law-abiding and productive citizen. Further, pursuant to 18 USC § 3565(a), any violation of probation would subject Mr. Dowell to a revocation of his sentence of probation and resentencing. Thus, this Court would continue to have the ability to impose a more severe sentence in the future, if necessary. Robert Dowell respectfully submits that a sentence of a fine and/or probation is available and would be sufficient.

**CONCLUSION:**

      Robert Dowell, through undersigned counsel, respectfully requests this Court consider all the foregoing information when formulating an appropriate disposition in Mr. Dowell's case. A term of imprisonment is not required to satisfy the concerns expressed in 18 USC § 3553. Given that these are Class B Misdemeanors, a fine and/or a term of probation would not create a disparity between Mr. Dowell and other similarly situated offenders. For the foregoing reasons, Mr. Dowell respectfully submits that a fine and/or a probationary term is warranted pursuant to 18 USC § 3553. As such, Mr. Dowell respectfully requests this Court impose a fine and alternatively, impose a term of probation.

Respectfully submitted,

**FUNK, SZACHACZ & DIAMOND, LLC**

**/s/ Kepler B. Funk**
KEPLER B. FUNK
Florida Bar # 957781
Pro Hac Vice Counsel for Dowell
321-953-0104
kep@fsdcrimlaw.com

**/s/ Alan S. Diamond**
ALAN S. DIAMOND
Florida Bar # 949698
Pro Hac Vice Counsel for Dowell
321-953-0104
alan@fsdcrimlaw.com

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to the United States Attorney's Office by CMECF delivery this 16th day of August 2024.

/s/ Kepler B. Funk
**Kepler B. Funk, Esquire**
FUNK, SZACHACZ & DIAMOND, LLC
3962 West Eau Gallie Blvd. Suite B.
Melbourne, Florida 32934
(321) 953-0104
Florida Bar No. 957781
kep@fsdcrimlaw.com
Pro Hac Vice Attorney for Defendant Dowell

/s/ Alan S. Diamond
**Alan S. Diamond, Esquire**
FUNK, SZACHACZ & DIAMOND, LLC
3962 West Eau Gallie Blvd. Suite B.
Melbourne, Florida 32934
(321) 953-0104
Florida Bar No. 949698
alan@fsdcrimlaw.com
Pro Hac Vice Attorney for Defendant Dowell